JOSEPH CALLOWAY, executor, *et al.*, plaintiffs in error, *vs.* THE PEOPLE'S BANK OF BELLEFONTAINE *et al.*, defendants in error.

A creditor having two securities, one within this state, and one beyond it, will not, at the instance of a competing creditor holding a junior lien on the former security, be driven out of the state to exhaust his security there before being allowed to proceed here. If there be to this general rule any exception whatever, it does not arise where there is a want of full, clear and distinct evidence that the security beyond the state is substantial, of certain value, and likely to prove available at once for liquidating some considerable part of the creditor's claim.

Debtor and creditor.    Liens.    Before Judge HILL.    Bibb county.    At Chambers.    August 5th, 1875.

This case was before this court at the last term: See 54 *Georgia Reports*, 441. It is sufficiently reported in the opinion.

Calloway *vs.* The People's Bank of Bellefontaine *et al.*

D. A. WALKER, for plaintiffs in error.

LANIER & ANDERSON; HILL & HARRIS for defendants.

BLECKLEY, Judge.

Mortgagees, with power delegated in the mortgage to sell publicly, on breach of condition after a prescribed course of advertisement, were proceeding to execute the power. Creditors of the mortgagor who held judgments junior to the mortgage, and had purchased the mortgaged premises at sheriff's sale under their judgments, applied, by bill in equity, to enjoin the intended sale by the mortgagees. The injunction was granted, and this court, at January term, 1875, reversed the order granting it. Subsequently, by amendment to the bill, additional facts were brought before the chancellor, and the motion for injunction was renewed. Among the new matters alleged and proved, it appeared that the mortgagees had another security for their debt, of equal date with their mortgage, to-wit: a trust deed from the mortgagor to one Jaques, of Tennessee, covering certain realty in that state, and twelve hundred and fifty shares of unissued stock in the East Tennessee Iron and Coal Company, a corporation chartered by that state. The chancellor seems to have been satisfied that, according to the answer and the various affidavits read at the hearing, the new matters did not establish a case for injunction, except in so far as the twelve hundred and fifty shares of stock were concerned. Deeming this stock a security that ought to be first exhausted, he ordered an injunction against the sale of the mortgaged property, (which is situated within this state,) until after the mortgagees shall have caused a sale of this stock in the Tennessee corporation, according to the terms of the trust deed. The theory of the injunction is, that the mortgagees must realize what they can out of this security in Tennessee, and pause in their proceedings against the property here, until they have demonstrated that a sale of the latter under the mortgage is necessary. The case of *Denham vs. Williams*, 39 *Georgia Reports*, 312, lays down a contrary prin-

ciple, and seems to us substantially in point. It declares that a mortgagee whose mortgage covers property in Georgia and in Tennessee, cannot be compelled by a junior mortgagee, whose mortgage covers part of the same property in Georgia, to go out of the jurisdiction of the court into another state, and pursue his remedy, first against the property in Tennessee.

Several suggestions were made in the argument as reasons for distinguishing the present case from that. It was contended, that in that case the junior mortgagee had waited until the senior had settled in full and canceled his lien; that the senior was a resident of Georgia and the junior a resident of Tennessee, whereas, in this case, the seniors and not the juniors are residents of Tennessee; and that the present case presents, not only a competition among the creditors, strictly, but also a competition of the junior creditors, as purchasers of the equity of redemption, with the senior creditors as mortgagees. We rule nothing as to the legal character of these or other distinctions; they may or may not be sound. It is clear that the judgment in the former case ought, at least, to be respected as the general rule ; and so treating it, if we give effect to it as law at all, we must admit no exception which does not come before us with all the essential elements to make it an exception. One of the indispensable elements would be value—value and ready availability of the foreign security. The record is wholly deficient in the requisite evidence on these points. The stock is shown to be unissued, and of a servient class, subject to assessments, which have the first lien upon it, and even now, burdened with an unpaid assessment for a considerable sum. That it has any certain market value whatever, does not appear; on the contrary, the indications are very strong that it is somewhat nominal in its nature, and in no condition at the present time to be marketed. It seems to lie, as yet, in the womb of the corporation, not having reached a development and maturity warranting it to be issued and delivered to the owner. It may be compared, not inaptly, to the expected issue of a slave, or to a foal not yet brought forth. The proof is clear that the assets of the cor-

poration consist of land and lease-holds in land adapted to mining; not now in productive use, but lying idle, awaiting either sale, or further development of the adjacent country with improved means of transportation. These assets are valuable, but it is a value lodged in hope rather than in fruition; still, the present value is considerable, and the effort is made by counsel to measure the worth of the unissued stock by the worth of the corporate assets. Such a standard would be fallacious, even if applied to ordinary stock, but when applied to stock subject to assessment, there being a large amount of other stock in the same corporation exempt, it ceases to be a guide at all. That it is, in fact, no guide is shown by the circumstance that the witnesses who could and did affix something like a definite value upon the assets, were unable or unwilling to value this inferior class of stock at anything definite whatever. To delay creditors here until they had dealt with such security as that in Tennessee, would be to send them away, not to realize, but to experiment. That security is not ripe; the one in Georgia, so far as appears, is mature and ready for the harvest. Let it be gathered in.

Judgment reversed.